UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-12617-GAO

THE VERTEX COMPANIES, INC.,
Plaintiff,

v.

CLIFFORD COOPER,
Defendant.

OPINION AND ORDER
February 19, 2020

O'TOOLE, S.D.J.

The claims in this case stem from a dispute over ownership of U.S. Patent No. 9,851,275, ("'275 Patent"), entitled "Systems and Methods for Tracing Air." The Vertex Companies, Inc. ("Vertex") asserts against its former employee Clifford Cooper claims for breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); unjust enrichment (Count III); fraudulent misrepresentation (Count IV); a declaratory judgment that Vertex is entitled to an irrevocable license to the '275 Patent (Count V); and a prayer for a preliminary and permanent injunction preventing Cooper from taking any action with the '275 Patent inconsistent with his contractual obligations to Vertex (Count VI). In turn, Cooper seeks a declaratory judgment that Vertex's termination of his employment was not for cause, but "for convenience" (Count I) and asserts a claim for conversion of his property, a computer (Count II). Cooper has moved for summary judgment in his favor on all of Vertex's claims and on Count I of his counterclaim (dkt. no. 17). Vertex, in turn, has moved for summary judgment on its breach of contract claim. (dkt. no. 25).

Cooper began working at Vertex as a Senior Industrial Hygienist effective March 1, 2012. Prior to his start date, Vertex sent Cooper an Offer Letter setting out the terms of his employment which contained a Proprietary Information and Inventions Agreement ("Inventions Agreement"):

> The Company's Proprietary Information and Inventions Agreement is incorporated herein and attached as <u>Attachment A</u>. Your commencement of employment with the Company shall constitute acceptance of all the terms and conditions contained in the Proprietary Information and Inventions Agreement.

(Decl. of Erik Borgesen ("Borgesen Decl.") Ex. A at 3 (dkt. no. 30-1).) The Offer Letter also stated that the letter "together with all Attachments and Exhibits, forms the complete and exclusive statement of your employment agreement with" Vertex. (<u>Id.</u>) The Inventions Agreement itself included the following pertinent sections:

> **1.2 Proprietary Information**. . . . *"Proprietary Information"* includes (a) trade secrets, inventions, ideas, processes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques (hereinafter collectively referred to as *"Inventions")*
> . . . .
> **2.2 Prior Inventions**. Inventions, if any, patented or unpatented, which I made prior to the commencement of my employment with the Company are excluded from the scope of this Agreement. To preclude any possible uncertainty, I have set forth on *Exhibit 1* (Previous Inventions) attached hereto a complete list of all Inventions that I have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to the commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively referred to as *"Prior Inventions"*).
> . . . .
> **2.3 Assignment of Inventions.** Subject to Sections 2.4 and 2.6, I hereby assign and agree to assign in the future (when any such Inventions or Proprietary Rights are first reduced to practice or first fixed in a tangible medium, as applicable) to the Company all my right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect thereto) whether or not patentable or registrable under copyright or similar statutes, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment with the Company. Inventions assigned to the Company, or to a third party as directed by the Company pursuant to this Section 2, are hereinafter referred to as **"Company Inventions."**

(<u>Id.</u> at 5–6.)

Cooper completed the Previous Invention form by hand and identified as a prior invention that was to be excluded from assignment to Vertex an "air-tracer method using d-limonene tracer and PID[1] detector" (the "Disclosed Invention"). (Id. Ex. D.) Cooper signed and returned the Offer Letter to Vertex and included the filled-out Previous Inventions form.

During his employment with Vertex, Cooper was issued the '275 Patent; and he is listed as the sole inventor. The '275 Patent has the following relevant independent claims:

> 1. A system comprising: a tracer delivery device operative to emit a tracer comprising at least one of *a terpene and a terpene alcohol* into air; and a detector operative to detect the tracer in air.
> . . . .
> 13. A method comprising the steps of: emitting a tracer comprising at least one of *a terpene and a terpene alcohol* into air using a tracer delivery device; and detecting the tracer in the air using a detector.
> . . . .
> 20. A method comprising the steps of: emitting a tracer comprising at least one of *a terpene and an alcohol* into air using a tracer delivery device; and detecting the tracer in the air using a photoionization detector.

(Id. Ex. E at 13–14) (emphasis added.)

"Terpenes" are a large class of organic compounds useful in many and varied ways, including industrial applications. "D-limonene," disclosed as reserved to Cooper in his Prior Inventions form, is a terpene. There are many others. The issue that principally divides the parties is whether Cooper's reserved prior invention included not only the use of the terpene d-limonene, but alternatively or also "a terpene alcohol" or "an alcohol" as claimed in the '275 Patent. Cooper insists that describing an "air tracer method using d-limonene tracer and PID detector" necessarily implies that use of an alcohol is also included. Vertex vigorously disagrees, noting that in extensive discovery of Cooper's pre-Vertex work there is no reliable evidence of his description of the use of alcohol together with a terpene, but that there is evidence that Cooper described the use of

---

[1] PID is shorthand for "photoionization detector."

alcohol with a terpene in a paper he developed after he became employed at Vertex, a circumstance that suggests invention during that employment.

Cooper's "it didn't need to be said explicitly" argument seems to be an assertion that the inclusion of an alcohol in the d-limonene invention would have been obvious to a person of ordinary skill in the relevant art. Neither party addresses that question square-on. If the inclusion of alcohol would *not* have been obviously a necessary part of the d-limonene invention, then Cooper's basic argument would be without adequate support, and Vertex would be entitled to judgment on the basis of permissible, and apparently necessary, inferences made on the documentary evidence it has cited. On the other hand, if a person of ordinary skill in the art would have agreed with Cooper's assertion that the necessary inclusion of alcohol would have been obvious, his case that the use of alcohol was included in his Prior Inventions reservation would be significantly strengthened, as would his claim to ownership of the '275 Patent.

There is thus a question of fact that cannot be resolved in either party's direction, and summary judgment for either party is inappropriate on this record.

For the reasons stated, both Cooper's Motion for Summary Judgment (dkt. no. 17) and Vertex's Cross-Motion for Summary Judgment (dkt. no. 25) are DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
Senior United States District Judge